**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ORLANDO MCGILL and LASAWANDA MCGILL** | : | **Civil Action No.** |
| **Plaintiffs,** | : | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **v.** | : | |
| **ASTRAZENECA PHARMACEUTICALS LP and ASTRAZENECA LP.** | : | |
| **Defendants.** | : | |

## COMPLAINT

Plaintiffs, Orlando McGill and Lasawanda McGill, domiciled in Madison (Madison County) within the State of Illinois, by way of Complaint against Defendants, AstraZeneca Pharmaceuticals LP, and AstraZeneca LP (collectively “Defendants) alleges as follows:

## NATURE OF THE ACTION

1. This is an action for personal injuries and economic damages suffered by Plaintiffs, Orlando McGill and Lasawanda McGill, as a direct and proximate result of Defendants’ negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling and/or sale of the proton pump inhibiting (“PPI”) drug known as Nexium (esomeprazole magnesium) and/or other Nexium-branded products with the same active ingredient herein collectively referred to as “NEXIUM”.

**PARTIES**

2. At all times referenced herein, Plaintiff, Orlando McGill, was and is a domiciliary of Madison, Illinois located in Madison County.

3. At all times referenced herein, Plaintiff, Lasawanda McGill, was the spouse of Orlando McGill, and is a domiciliary of Madison, Illinois located in Madison County.

AstraZeneca Pharmaceuticals LP

4. Defendant AstraZeneca Pharmaceuticals LP is, and all times relevant to this action was, a Delaware corporation with its corporate headquarters in Wilmington, Delaware.

5. At all times relevant hereto, Defendant AstraZeneca Pharmaceuticals LP was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling and/or selling Nexium products.

6. Upon information and belief, at all relevant times, Defendant AstraZeneca Pharmaceuticals LP was present and doing business in Plaintiffs' state of residency.

7. At all relevant times, Defendant AstraZeneca Pharmaceuticals LP transacted, solicited and conducted business in Plaintiff's state of residency and derived substantial revenue from such business.

8. At all relevant times, Defendant AstraZeneca Pharmaceuticals LP expected or should have expected that its acts would have consequences throughout the United States of America including Plaintiffs' state of residency in particular.

9. Defendant AstraZeneca Pharmaceuticals LP is the holder of approved New Drug Applications ("NDAs") for the following forms of Nexium: Delayed-Release Capsule Pellets (20 mg and 40 mg), with NDA #021153, approved on 2/20/2001; Delayed-Release Oral Suspension Packets (2.5MG, 5MG, 20MG, 40MG), with NDA # 021957, approved on 10/20/2006; Delayed-Release Oral Suspension Packets (10MG), with NDA # 022101, approved

on 02/27/2008; and Injection (20MG VIAL, 40MG VIAL), with NDA # 022101, approved on 03/31/2005.

AstraZeneca LP

10. At all relevant times, Defendant AstraZeneca LP was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling and/or selling Nexium products.

11. Defendant AstraZeneca LP is, and all times relevant to this action was, a Delaware Corporation with its corporate headquarters in Wilmington, Delaware.

12. Upon information and belief, at all relevant times, Defendant AstraZeneca LP was present and doing business in Plaintiffs' state of residency.

13. At all relevant times, Defendant AstraZeneca LP transacted, solicited and conducted business in Plaintiffs' state of residency and derived substantial revenue from such business.

14. At all relevant times, Defendant AstraZeneca LP expected or should have expected that its acts would have consequences throughout the United State of America, including Plaintiffs' state of residency in particular.

Defendants' Unity of Interest

15. Upon information and belief, at all relevant times, each of the Defendants and their directors and/or officers acted within the scope of their authority for and on behalf of the other Defendant. During all relevant times, Defendants possessed a unity of interest between themselves and exercised control over their respective subsidiaries and affiliates.

16. Upon information and belief, at all relevant times, each Defendant was the agent and employee of the other Defendant, and in performing the wrongful acts alleged, each Defendant was acting within the course and scope of such agency and employment with each

Defendants' actual and implied permission, consent, authorization and approval. As such, each Defendant is individually, as well as jointly and severally, liable to Plaintiff for Plaintiffs' injury, losses and damages.

17. Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP are thus collectively referred to herein as "Defendants" or "AstraZeneca".

## JURISIDCTION AND VENUE

18. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this case is a civil action where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events and/or omissions giving rise to the Plaintiffs' claims emanated from activities within this jurisdiction and Defendants transact substantial business within this jurisdiction.

20. Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over Defendants, because Defendants are present in Plaintiffs' state of residency, such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

21. This Court has personal jurisdiction over Defendants pursuant to and consistent with the Constitutional requirements of Due Process because Defendants, acting through their agents or apparent agents, committed one or more of the following: transaction of business within the state of Illinois; making of contracts within the state; the commission of a tortious act within this state; and the ownership, use, or possession of any real estate situated within this state as well as registered as foreign corporations to do business within the state.

22. Requiring Defendants to litigate these claims in Plaintiffs' home state does not offend traditional notions of fair play and substantial justice and is permitted by the United States

Constitution. All of Plaintiffs' claims arise in part from conduct Defendants purposefully directed to Plaintiff's home state of Illinois. Upon information and belief, Defendants' Nexium products are sold at hundreds of local and national pharmacies, including, but not limited to Wal-Mart, Target, CVS, and Walgreens throughout Plaintiffs' home state of Illinois.

23. Upon information and belief, Defendants avail themselves of numerous advertising and promotional materials regarding their defective Nexium products specifically intended to reach consumers in Plaintiffs' home state, including but not limited to advertisements on local television programs, advertisements on local radio broadcasts, advertisements on billboards and advertisements in print publications delivered to consumers in Plaintiffs' home state of Illinois.

24. Plaintiffs' claims arise out of Defendants' design, marketing and sale of Nexium products in Plaintiffs' home state.

25. Defendants regularly conduct or solicit business and derive substantial revenue from goods used or consumed in, inter alia, Plaintiffs' home state.

26. At all relevant times, Defendants were present and doing business in Plaintiffs' home state of Illinois

27. At all times relevant hereto, Defendants transacted, solicited, and conducted business in Plaintiffs' home state and derived substantial revenue from such business.

28. At all relevant times, Defendants placed Nexium products ingested by Plaintiff into the stream of interstate commerce.

29. At all relevant times, Defendants expected or should have expected that their acts and omissions would have consequences within the United States, including Plaintiffs' home state in particular.

30. Defendants named herein are conclusively presumed to have been doing business in this state and are subject to Illinois' long arm jurisdiction.

31. Plaintiffs' damages in this matter accrued in Plaintiffs' home state.

## GENERAL FACTUAL ALLEGATIONS

### A. Proton Pump Inhibitors Generally

32. Proton pump inhibitors ("PPIs") are one of the most commonly prescribed medications in the United States. In 2013, more than 15 million Americans used prescription PPIs, costing more than $10 billion.

33. PPIs are indicated for the treatment of conditions such as: Gastroesophageal reflux disease ("GERD"); dyspepsia; acid peptic disease; Zollinger-Ellison syndrome; acid reflux; and peptic or stomach ulcers.

34. Nexium (esomeprazole magnesium) is a PPI that works by inhibiting the secretion of stomach acid. It shuts down acid production of the active acid pumps in the stomach thereby reducing hydrochloric acid in the stomach. The drug binds with the proton pump which inhibits the ability of the gastric parietal cell to secrete gastric acid.

35. Defendants sold Nexium with National Drug Code ("NDC") numbers 0186-5020, 0186-5022, 0186-5040, 0186-5042, 0186-40100186-4020, and 0186-4040.

36. Nexium is AstraZeneca's largest-selling drug, and in the world market, the third largest selling drug overall. In 2005, AstraZeneca's sales of Nexium exceeded $5.7 billion. In 2008, Nexium sales exceeded $5.2 billion.

### B. Dangers Associated with PPIs

37. During the period in which Nexium have been sold in the United States, hundreds of reports of injury have been submitted to the FDA regarding the ingestion of Nexium and other PPIs. Defendants have had notice of serious adverse health outcomes through case reports,

clinical studies and post-market surveillance. Specifically, Defendants have received numerous case reports of several types of kidney injuries in patients who ingested Nexium, including: Acute Interstitial Nephritis ("AIN"); Chronic Kidney Disease ("CKD"); Renal/Kidney Failure; and Acute Kidney Injury ("AKI").

38. These reports put Defendants on notice of the excessive risk of kidney injury related to the use of Nexium. However, Defendants took no action to inform Plaintiff or Plaintiff's physicians of these risks. Instead, Defendants continued to represent that Nexium did not pose any risk of kidney injuries.

**C. Acute Interstitial Nephritis Dangers Associated with PPIs**

39. Acute Interstitial Nephritis ("AIN") is the inflammation of the tubes and tissues of the kidneys. The most common symptoms of AIN are fatigue, nausea and weakness. Symptoms related to AIN can begin as soon as one week following PPI ingestion.

40. The risk of AIN among PPI users was first raised in 1992. Five years later, an additional study raised concerns. Between 2004 and 2007, at least three additional studies confirmed AIN related to PPI usage. More recent studies indicate that those using PPIs such as Nexium are at a three times greater risk than the general population to suffer AIN.

41. By July 2011, the World Health Organization adverse drug reaction report included nearly 500 cases of AIN already reported that year.

42. On or about October 30, 2014, the FDA notified Defendants that it had determined that PPIs, including Nexium, pose additional risks not previously disclosed.

43. On December 19, 2014, labeling for PPIs was updated to include a warning about AIN. The new label added, for the first time, a section about AIN that read, in relevant part, that AIN "may occur at any point during PPI therapy."

44. However, the current warning regarding the risk of AIN is far from adequate, lacking the necessary force and specificity to give patients and their healthcare providers the proper information needed to make an informed decision about whether to start or continue a drug regimen with the potential for such dire consequences. If left untreated, AIN can lead to Chronic Kidney Disease, Renal Failure, Dialysis, Kidney Transplant and/or death.

**D. Chronic Kidney Disease Associated with PPIs**

45. Chronic Kidney Disease ("CKD") is the gradual loss of kidney function. Kidneys filter waste and excess fluid from the blood, which are then excreted. When CKD reaches an advanced stage, dangerous levels of fluid, electrolytes and waste can build up in the body.

46. In the early stages of CKD, patients may have few signs or symptoms. CKD may not become apparent until kidney function is significantly impaired.

47. Treatment for CKD focuses on slowing the progression of kidney damage, usually by attempting to control the underlying cause. CKD can progress to end-stage kidney failure, which can be fatal absent artificial filtering, dialysis or a kidney transplant. Early treatment is often the key to avoiding the most negative outcomes.

48. CKD is associated with a substantially increased risk of death and cardiovascular events.

49. Studies have shown the long term use of PPIs was independently associated with a 20% to 50% higher risk of CKD, after adjusting for several potential confounding variables, including demographics, socioeconomic status, clinical measurements, prevalent co-morbidities, and concomitant use of medications.

50. In at least one study, the use of PPIs for ***any*** period of time, was shown to increase the risk of CKD by 10%.

51. Currently, the Nexium product labeling does not contain any warning regarding the increased risk of CKD.

**E. Acute Kidney Injury Dangers Associated with PPIs**

52. Studies indicate that those using PPIs such as Nexium are at a more than 2.5 times greater risk than the general population to suffer Acute Kidney Injury ("AKI").

53. Studies also indicated that those who develop AIN are at a significant risk of AKI even though they may not obviously exhibit kidney dysfunction.

54. Currently, the Nexium product labeling does not contain any warning regarding the increased risk of AKI.

**F. Safer Alternatives to PPIs**

55. Despite the fact that Nexium and other PPIs lead to an increased risk of numerous injuries as outlined herein, several safer alternatives are available, including but not limited to:

a. The use of over-the-counter calcium carbonate remedies tablets that have been available since the 1930s, such as Maalox and Tums; and/or

b. The use of hertamine H2-receptor antagonists (also known as H2 blockers) that were developed in the late 1960s. H2 blockers act to prevent the production of stomach acid and work more quickly than PPIs and are prescribed for the same indications as PPI's. Examples of H2 blockers include Zantac, Pepcid and Tagamet. H2 receptor antagonists are not associated with an increased risk of renal injuries.

**G. Allegations Common to All Causes of Action**

56. Defendants knew or should have known about the correlation between the use of Nexium and the significantly increased risks of AIN, CKD, AKI and other renal impairment.

Yet, Defendants failed to adequately warn of these risks from ingestion of Nexium, including the negative effects on the kidney.

57. In omitting, concealing, and inadequately providing critical safety information regarding the use of Nexium to Plaintiff and Plaintiff's healthcare providers, Defendants engaged in, and continue to engage in, conduct likely to mislead consumers, including Plaintiffs and Plaintiff's healthcare providers. This conduct is fraudulent, unfair and unlawful.

58. Despite clear knowledge that Nexium causes a significantly increased risk of CKD, AKI and other renal impairment, Defendants continue to market and sell Nexium without warning consumers or healthcare providers of the significant risks to the kidney.

**H. Plaintiff's Use of Nexium and Resulting Harm**

59. Plaintiff, Orlando McGill, is and was, at all relevant times, a citizen of the State of Illinois.

60. Plaintiff was born on April 2, 1968.

61. Upon information and belief, Plaintiff was prescribed Nexium on numerous occasions, beginning as early as 2004, and consistently thereafter through 2016. Plaintiff ingested Nexium as prescribed by his prescribing physicians.

62. Plaintiff would not have used this product had he been properly warned of the kidney risks associated with their ingestion.

63. As a result of using Defendants' Nexium, Plaintiff suffered an acute kidney injury and was diagnosed with Chronic Kidney Disease. Plaintiff also sustained severe and permanent personal injuries, pain, suffering, economic loss, and emotional distress.

64. The aforementioned injuries and damages sustained by Plaintiff were caused by the ingestion of Defendants' Nexium.

## TOLLING OF THE STATUTE OF LIMITATIONS

65. Defendants negligently represented to the medical and healthcare community the FDA, to Plaintiff and the public that Nexium had been tested and was found to be safe and/or effective for its indicated use.

66. Defendants, at all relevant times, knew or should have known of the risks and defects with Nexium products, however Defendants concealed their knowledge of Nexium's risks and defects and failed to notify Plaintiff, the FDA, the public and the medical community including Plaintiff's prescribing physicians.

67. Defendants undertook such action with the intent of defrauding and deceiving the public and the medical community at large, including Plaintiff and Plaintiff's prescribing physicians, with the intent of inducing the prescription, dispensing, and/or purchasing of Nexium for the treatment of GERD, all of which evidenced a callous, reckless, willful indifference to the health, safety and welfare of Plaintiff herein.

68. Any applicable statute of limitations has therefore been tolled by Defendants' knowledge, active concealment and denial of the facts alleged herein, which behavior is still ongoing.

69. Plaintiffs only recently discovered that Plaintiffs' injuries could have been caused by the use of Nexium.

## COUNT I
## NEGLIGENCE

70. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

71. Defendants owed a duty to manufacture, compound, label, market, distribute, and supply and/or sell Nexium in such a way as to avoid harm to person upon whom they are used,

such as Plaintiff, Orland McGill, or to refrain from such activities following knowledge and/or constructive knowledge that such product is harmful to persons upon whom it is used.

72. Defendants owed a duty to warn of the hazards and dangers associated with the use of its products for patients such as, Plaintiff, Orlando McGill, so as to avoid harm.

73. Defendants were guilty of carelessness, recklessness, negligence, gross negligence and willful, wanton, outrageous and reckless disregard for human life and safety in manufacturing, designing, labeling, marketing, distributing, supplying, selling and/or placing into the stream of commerce Nexium, including in the following respects

a. Failing to conduct adequate and appropriate testing of Nexium;

b. Putting Nexium on the market without first conducting adequate testing to determine possible side effects;

c. Putting Nexium on the market without adequate testing its dangers to humans;

d. Failing to recognize the significance of their own and other testing of, and information regarding Nexium, which testing evidence such product are potentially harmful to humans;

e. Failing to respond promptly and appropriately to their own and other testing of, and information regarding PPIs, which indicated such products are potentially harmful to humans;

f. Failing to promptly and adequately warn of the potential PPIs to be harmful to humans;

g. Failing to promptly and adequately warn of the potential for kidney injuries including acute interstitial nephritis, acute kidney injuries, and chronic kidney disease when using PPIs;

h. Failing to promptly, adequately, and appropriately recommend testing and monitoring of patients upon whom these products were used in light of such products potential harm to humans;

i. Failing to properly, appropriately, and adequately monitor the post-market performance of PPIs and such products effects on patients;

j. Concealing from the FDA, National Institutes of Health, the general medical community and/or physicians, their full knowledge and experience regarding the potential that PPIs are harmful to humans;

k. Promoting, marketing, advertising and/or selling PPIs for use on patients given their knowledge and experience of such products' potential harmful effects;

l. Failing to withdraw PPIs from the market, restrict their use and/or warn of such products' potential dangers, given their knowledge of the potential for its harm to humans;

m. Failing to fulfill the standard of care required of a reasonable, prudent, products manufacturer engaged in the manufacture of PPIs;

n. Placing and/or permitting the placement of PPIs into the stream of commerce without warnings of the potential for said products to be harmful to humans and/or without properly warning of said products' dangerousness;

o. Failing to disclose to the medical community in an appropriate and timely manner, fact relative to the potential PPIs to be harmful to humans;

p. Failing to respond or react promptly and appropriately to reports of PPIs causing harm to patients;

q. Disregarding the safety of users or consumers of PPIs, including Plaintiff, Orlando McGill, under the circumstances by failing adequately to warn of said products' potential harm to humans;

r. Disregarding the safety of users and consumers of PPIs, including Plaintiff, Orlando McGill, and/or his physicians' and/or hospital, under the circumstances by failing to withdraw said products from the market and/or restrict their usage;

s. Disregarding publicity, government and/or industry studies, information, documentation and recommendations, consumer complaints and reports and/or other information regarding the hazards of PPIs and their potential harm to humans;

t. Failing to exercise reasonable care in informing physicians and/or hospitals using PPIs about their own knowledge regarding said products' potential harm to humans;

u. Failing to remove Nexium from the stream of commerce;

v. Failing to test Nexium properly and/or adequately so as to determine its safety for use;

w. Promoting Nexium on websites aimed at creating user and consumer demand;

x. Failing to conduct and/or respond to post-marketing surveillance of complications and injuries;

y. Failing to use due care under the circumstances; and

z. Such other acts or omissions constituting negligence and carelessness as may appear during the course of discovery or at the trial of this matter.

74. As a direct and proximate result of Defendants' negligent acts and omissions, Plaintiff, Orlando McGill, suffered an acute kidney injury and chronic kidney disease.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT II
## STRICT PRODUCTS LIABILITY

75. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

76. Defendants designed, developed, researched, tested, licensed, manufactured, packaged, labeled, promoted, marketed, sold, and distributed Nexium in a defective and unreasonably dangerous condition. The design defect made Nexium more dangerous than an ordinary consumer would expect and more dangerous than other drug used to treat GERD.

77. The Nexium inadequate warnings rendered it unreasonably dangerous and defective.

78. Defendants' defective warnings for Nexium were reckless, willful, wanton, fraudulent, malicious, and done with reckless disregard for the health and safety of users of Nexium. Defendants made conscious decisions not to adequately warn about risk they know or should have known about. Defendants' reckless conduct warrants an award of punitive damages. Defendants' conduct was motivated by greed and the intentional decision to value profits over the safety and well-being of the consumers of Nexium.

79. Plaintiff, Orlando McGill, was prescribed and used Nexium for its intended purposes and for purposes that Defendants expect and could foresee.

80. Defendants expected and intended Nexium to reach, and did in fact reach, Plaintiff, Orlando McGill, without any substantial change in the condition of the product from when it was initially manufactured by Defendants.

81. Plaintiffs could not have discovered the unwarned risks in Nexium through the exercise of reasonable care.

82. Defendants, as manufacturers and/or distributors of the subject prescription product, are held to the level of knowledge of an expert in the field.

83. Defendants, the manufacturers and/or distributors of the subject prescription product, are held to a level of knowledge of an expert in the field as the Reference Listed Drug Company and the New Drug Application Holder.

84. Defendants knew or should have known that the warnings and other relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Nexium were incomplete and inadequate.

85. Plaintiffs did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiffs or Plaintiff, Orlando McGill's treating physicians. The warnings that were given by Defendants were not accurate, clear, and/or were ambiguous.

86. Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, supply, warn, and take other such steps as necessary to ensure that Nexium did not cause users to suffer from unreasonable and dangerous risks.

87. Defendants knew or should have known that the limited warnings disseminated with Nexium were inadequate, but they failed to communicate adequate information on the dangers and safe use of its product, taking into account the characteristic of and the ordinary

knowledge common to physicians, who would be expected to prescribe the drug. In particular, Defendants failed to communicate warnings and instruction to doctors that were appropriate and adequate to render Nexium safe for its ordinary, intended, and reasonably foreseeable uses, including the common, foreseeable, and intended use of Nexium for treatment of GERD.

88. As a direct and proximate cause of Defendants manufacture, sale and promotion of the defectively designed drug and failure to warn Plaintiff and Plaintiff, Orlando McGill's physicians about the significant risks inherent in Nexium, Plaintiffs sustained severe injuries.

89. As a result of the unreasonably dangerous and defective conditions of Nexium, which Defendant manufactured, designed, labeled, marketed, distributed, supplied, sold, and/or placed into the stream of commerce, they are strictly liable to the Plaintiffs for their injuries that they directly and proximately caused, based on the following:

a. Failing to provide adequate warnings with their Nexium; and

b. Failing to properly and adequately design their Nexium.

90. Because of Defendants' failures, Plaintiff, Orlando McGill, used Nexium, which the Defendants manufactured, designed, sold, supplied, marketed or otherwise introduced into the stream of commerce.

91. For all of the reasons alleged herein, Nexium was unreasonably dangerous because an adequate warning about the product had not been provided and at the time the product left the manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide adequate warnings that such characteristics and its dangers to users of the product.

92. Further, Defendants, before, during, and after these products left their control, acquired knowledge of the characteristic of the product that may cause damage and the danger of such characteristic (or, alternatively, Defendants would have acquired such knowledge if it had

acted as reasonable prudent manufacturers), and thus are liable for damages suffered by Plaintiffs which arose as a consequence of Defendants' failure to use reasonable care to provide an adequate warning of such characteristic and its dangers to users.

93. As a direct and proximate result of Defendants' Nexium, Plaintiff, Orlando McGill, suffered acute kidney injuries and chronic kidney disease.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT III
## BREACH OF EXPRESS WARRANTY

94. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

95. Defendants expressly represented to Plaintiffs, other consumers, and the medical community, that Nexium was safe and fit for its intended purposes, was of merchantable quality, did not produce any dangerous side effects, and had been adequately tested.

96. Nexium does not conform to Defendants' express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries, including, but not limited to, developing CKD and other serious injuries and side effects.

97. At the time of making of the express warranties, Defendants knew, or in the exercise of reasonable care should have known, of the purpose for which the subject product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose. The subject product was unreasonably dangerous because it failed to conform to an express warranty of Defendants.

98. At the time of the making of the express warranties, Defendants knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that the subject product was not safe and fit for its intended use and, in fact, produces serious injuries to the user.

99. At all relevant times Nexium did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

100. Plaintiffs, other consumers, and the medical community relied upon Defendants' express warranties.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, cost herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT IV
## BREACH OF IMPLIED WARRANTY

101. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

102. At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold Nexium.

103. At all relevant times, Defendants intended that their Nexium be used in the manner that Plaintiff used it and Defendants impliedly warranted the product to be merchantable quality, safe and fit for such use, and was adequately tested.

104. Defendants breached various implied warranties with respect to Nexium, including:

a. Defendants represented through their labeling, advertising, marketing materials, details persons, seminar presentations, publications, notice letter, and regulatory submissions that Nexium was safe, and withheld and concealed information about the substantial risks of serious injury associated with long term use of Nexium; and

b. Defendants represented that Nexium was safe to use everyday.

105. In reliance upon Defendants' implied warranty, Plaintiff, Orlando McGill, used Nexium in the foreseeable manner promoted, instructed, and marketed by Defendants.

106. In using Nexium, Plaintiffs and Orlando McGill's physicians relied on the skill, judgment, representations, and warranties of Defendants. These warranties and representation proved to be false because Nexium was not safe and was unfit for the uses for which it was intended.

107. As a direct and proximate result of Defendants' conduct as described herein, Plaintiffs suffered the injuries and damager set forth herein.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, cost herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT V
## FRAUDULENT MISREPRESENTATION AND OMISSION

108. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

109. Defendants, having undertaken design, formulation, testing, manufacture, marketing, sale, and distribution of Nexium owed a duty to provide accurate and complete information regarding Nexium.

110. Defendants fraudulently misrepresented that the daily use of Nexium was safe and effective.

111. Defendants had a duty to provide consumers with true and accurate information regarding Nexium which is manufactured, marketed, distributed, and sold.

112. Defendants made representations and failed to disclose material facts with the intent to induce consumers, including Plaintiff, Orlando McGill, and the medical community to act in reliance by purchasing and using Nexium.

113. Plaintiff and the medical community justifiably relied on Defendants' representations and omissions by purchasing and taking Nexium.

114. As a direct and proximate result of Defendants' representations and omissions as described herein, Plaintiff suffered the injuries and damages set forth herein.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, cost herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT VI
## LOSS OF CONSORTIUM

115. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

116. Plaintiff, Lasawanda McGill, is the wife of Plaintiff, Orlando McGill and was his lawful wife on all material and relevant dates.

117. As a direct and proximate result of the negligence and other acts and omission of Defendants, described herein, Plaintiff, Lasawanda McGill, has suffered a loss of consortium, society, affections and service of her husband, Orlando McGill, as well as other economic damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, cost herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## COUNT VII
## PUNITIVE DAMAGES ALLEGATIONS

118. The acts, conduct and omissions of Defendants, as alleged throughout this Complaint were willful and malicious. Defendants committed these acts with a conscious disregard for the rights, health and safety of Plaintiffs and other PPI users and for the primary purpose of increasing Defendants' profits from the sale and distribution of Nexium. Defendants' outrageous and unconscionable conduct warrants and award of exemplary and punitive damages against Defendant in an amount appropriate to punish and make an example of Defendants.

119. Prior to the manufacturing, sale and distribution of Nexium, Defendants knew that said medication was in a defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injures. Further, Defendants, through their officers, directors, managers, and agents, knew that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiffs and as such, Defendants unreasonably subjected consumers of Nexium to risk of injury or kidney failure from using Nexium.

120. Despite its knowledge, Defendants, acting through its officers, directors and managing agents for the purposes of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in Nexium, and failed to warn the public, including Plaintiffs, of the extreme risk of injury occasioned by said defects inherent in Nexium. Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, distribution, and marketing of Nexium knowing these actions would expose person to serious danger in order to advance Defendants' pecuniary interest and monetary profits.

121. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of Plaintiffs, entitling Plaintiffs to exemplary damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages, together with interest, cost herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand that the issues contained herein be tried by a jury.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs prays for judgment against all Defendants and award additional relief as follows:

1. Economic and non-economic damages, special damages and general damages, including pain and suffering, in an amount to be supported by the evidence at trial;

2. For compensatory damages for the acts complained of herein in an amount to be determined by a jury;

3. For disgorgement of profits for the acts complained of herein in an amount to be determined by a jury;

4. Punitive damages for the acts complained of herein in an amount to be determined by a jury;

5. For an award of attorneys' fees and costs;

6. For prejudgment interest;

7. For the costs of suit;

8. For post-judgment interest; and

9. For such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury as to all claims and issues triable of right by a jury.

Respectfully submitted,

**ANAPOL WEISS**

/s/ Tracy A. Finken

Tracy A. Finken, Esquire
Sol H. Weiss, Esquire
One Logan Square
130 North 18th St., Suite 1600
Philadelphia, PA 19103
215-735-1130 (P)
215-875-7701 (F)
tfinken@anapolweiss.com

*Attorneys for Plaintiffs*

Dated: May 3, 2017